# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Chicago Regional Council of Carpenters v. Jursich, 2013 IL App (1st) 113279**

---

| | |
|---|---|
| Appellate Court Caption | CHICAGO REGIONAL COUNCIL OF CARPENTERS, Plaintiff and Counterdefendant-Appellant, v. EARL JURSICH, Defendant and Counterplaintiff-Appellee, and (Daniel McLaughlin and Larry Carroll, Third-Party Defendants-Appellants). |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-3279 |
| Filed | February 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to reduce to judgment the fines imposed on defendant for violating the constitution and rules of a carpenters' union by operating a nonunion construction company, the trial court properly denied the motion to dismiss defendant's counterclaim for defamation filed against the union members who brought charges and testified against defendant in the union's disciplinary proceedings, notwithstanding the union's claim that the defamation action was barred by Illinois's version of an anti-SLAPP statute, since counterdefendants failed to establish that the defamation action was retaliatory. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-M1-149659; the Hon. Anita Rifkin-Carothers, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Raymond J. Sanguinetti, of Whitfield, McGann & Ketterman, of Chicago, for appellants. |
|---|---|
| | James Maher, of Chicago, for appellee. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Lampkin and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1      The plaintiff and counterdefendant, the Chicago Regional Council of Carpenters (the CRCC), filed a complaint to reduce to judgment fines imposed against defendant and counterplaintiff, Earl Jursich. Mr. Jursich filed a counterclaim for defamation against the CRCC and the third-party defendants, Daniel McLaughlin and Larry Carroll (collectively the defendants). The defendants moved to dismiss the counterclaim pursuant to the Illinois Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2008)) (the Act). The circuit court denied the motion to dismiss. This court granted the defendants' petition for leave to appeal. See Ill. S. Ct. R. 306(a)(9) (eff. Feb. 16, 2011).

¶ 2      On appeal, the defendants contend that they were entitled to immunity under the Act and, therefore, the circuit court erred when it denied their motion to dismiss. We affirm the judgment of the circuit court.

¶ 3                                FACTS

¶ 4      Mr. McLaughlin, a member of the CRCC, brought charges against a fellow member, Mr. Jursich, accusing him of violating the constitution and rules of the CRCC by operating a nonunion construction company and by not paying the area's wages and benefits amounts to his employees. On October 26, 2005, the CRCC held a disciplinary hearing on the charges. Mr. Jursich was not present at the hearing.

¶ 5      At the hearing, Mr. McLaughlin stated that Mr. Jursich was an alderman in the City of Genoa and was using his political influence to establish his nonunion company, E. Joseph Construction. He also stated that Mr. Jursich "uses his political position as 4th ward alderman to strong arm clients ***. [Mr. Jursich] doesn't have ethics, doesn't live up to his obligation as a union carpenter." Pointing out that Mr. Jursich's wife had worked in the mayor of Genoa's office, Mr. McLaughlin stated that Mr. Jursich had done residential and commercial work in Genoa, and thus, "he's just a rotten SOB as far as I'm concerned." Finally, Mr. McLaughlin accused Mr. Jursich of defrauding the CRCC and of using it to

advance his political position.

¶ 6 In support of Mr. McLaughlin's charges, Larry Carroll, another CRCC member, stated that a contractor had his business shut down because he refused to hire Mr. Jursich to do subcontracting work for him. Mr. Carroll stated:

> "I don't like to roll over on my brother carpenters. We're kind of like cops and in essence that it might be wrong, but–you know, but for him to do this to another person, tactics that he used to squash a guy, use his power as alderman and as far as I know, the union had also put money into this guy's campaign to become an alderman and then on the side he's building houses, buying lots.

> * * *

> That's–I would love to have–after this go to the city and say this is the type of person that you have working for you using their weight."

The CRCC imposed fines totaling $45,300 on Mr. Jursich for the violations.

¶ 7 When Mr. Jursich failed to pay the fines, the CRCC filed suit to reduce the fines to judgment. During the discovery process, Mr. Jursich learned of the statements made by Messrs. McLaughlin and Carroll during the disciplinary hearing and filed his counterclaim against the defendants. Subsequently, the circuit court struck all but three counts of Mr. Jursich's third amended counterclaim.

¶ 8 The surviving counts alleged that, during the disciplinary hearing, Mr. McLaughlin and Mr. Carroll "repeatedly and falsely accused Mr. Jursich of using his political power as an alderman in the City of Genoa to unlawfully compete with rival construction companies within the City, to coerce other contractors to hire his company E Joseph Construction, and to retaliate against those who chose not to do business with E Joseph Construction." The third amended complaint further alleged that at the time the alleged slanderous statements were made, Messrs. McLaughlin and Carroll were employee/agents of the CRCC and were acting within the scope of their agency. Mr. Jursich sought an unspecified amount of compensatory and exemplary damages.

¶ 9 The circuit court denied the defendants' motion to dismiss the remaining counts of the third amended complaint. This appeal followed.

¶ 10 ANALYSIS

¶ 11 I. Standard of Review

¶ 12 The defendants sought dismissal of the suit based on section 20 of the Act. See 735 ILCS 110/20 (West 2008). A motion to dismiss based on immunity under the Act is properly raised under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)); "[it] admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL

111443, ¶ 55. Our review is *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 13 When ruling on a motion to dismiss, we construe the pleadings and supporting documents in the light most favorable to the nonmoving party and accept as true all well-pleaded facts in the complaint and all inferences that may reasonably be drawn in the plaintiff's favor. *Sandholm*, 2012 IL 111443, ¶ 55. We review the judgment of the lower court, not its reasoning, and we may uphold the court's judgment on any grounds called for by the record. *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 331 (2009).

¶ 14                                    II. Discussion

¶ 15 The Act is Illinois's version of an anti-SLAPP statute. See *Hammons v. Society of Permanent Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 3. A SLAPP or "Strategic Lawsuits Against Public Participation" is a meritless lawsuit utilized to retaliate against a party for attempting to participate in government by exercising first amendment rights such as the right to free speech or the right to petition. *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 12. As our supreme court explained in *Sandholm*, "[p]laintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense and distraction. [Citation.]" *Sandholm*, 2012 IL 111443, ¶ 34. A SLAPP plaintiff's goal is achieved not by success on the merits but by forcing defendants to expend funds on attorney fees and litigation costs, thus discouraging them from pursuing their protests. *Sandholm*, 2012 IL 111443, ¶¶ 34-35.

¶ 16 The purpose of the Act is to give relief to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits. *Sandholm*, 2012 IL 111443, ¶ 44. Our supreme court construed the language of section 15 to mean "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " (Emphasis in original.) *Sandholm*, 2012 IL 111443, ¶ 45 (quoting 735 ILCS 110/15 (West 2008)). However, the Act was not intended to protect individuals who commit tortious acts and then invoke the immunity afforded by it. *Id.* ¶ 45. Where a complaint genuinely seeks damages for defamation or other intentional torts, "it is irrelevant whether the defendants' actions were 'genuinely aimed at procuring favorable government action, result or outcome.' " *Id.* ¶ 53.

¶ 17 A claim is subject to dismissal under the Act where: (1) the movant's acts were in furtherance of his right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the nonmovant's claims are solely based on, related to, or in response to the movant's acts in furtherance of his constitutional rights; and (3) the nonmovant fails to produce clear and convincing evidence that the movant's acts were not genuinely aimed at solely procuring favorable government action. *Hammons*, 2012 IL App (1st) 102644, ¶ 18 (citing *Sandholm*, 2012 IL 111443, ¶¶ 53-57). See also *Ryan*, 2012 IL App (1st) 120005, ¶ 18.

¶ 18 Under the analysis set forth above, we must first determine whether the defendants were acting in furtherance of their constitutional right of speech, association or to participate in

government to obtain favorable governmental action. By filing a lawsuit to reduce to judgment the fines assessed against Mr. Jursich, the CRCC was exercising its constitutional right "to participate in government to obtain favorable governmental action." The complained-of statements by Messrs. McLaughlin and Carroll were made in the disciplinary proceedings and in connection with the charges against Mr. Jursich. See *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 120 (2010) (the right to petition the government for redress for grievances includes the right to file a claim before a judicial or administrative body).

¶ 19 The fact that the defendants' activities are the kind the Act is intended to protect does not mean that Mr. Jursich's lawsuit is subject to dismissal as a SLAPP lawsuit. *Ryan*, 2012 IL App (1st) 120005, ¶ 20. We must determine whether Mr. Jursich's lawsuit is "solely based" on the defendants' protected acts.

¶ 20 The party moving for dismissal under the Act bears the initial burden of proving that the claim was solely based on, related to or in response to acts in furtherance of the movant's rights of petition, speech and association. *Sandholm*, 2012 IL 111443, ¶ 56. To satisfy their burden in this case, the defendants were required to demonstrate affirmatively that Mr. Jursich's suit was retaliatory and meritless. *Ryan*, 2012 IL App (1st) 120005, ¶ 21. The defendants must meet this burden before Mr. Jursich is required to provide clear and convincing evidence that the defendants' activities were not immunized under the Act. *Sandholm*, 2012 IL 111443, ¶ 56.

¶ 21 In *Hytel Group, Inc.*, the plaintiff brought suit alleging breach of fiduciary duties and fraudulent misrepresentation against a former employee who had filed a claim with the Illinois Department of Labor for $2,300 in final wages. The lawsuit sought $1 million in compensatory damages and $3 million in punitive damages, as well as forfeiture and repayment of all wages paid to the employee. Pursuant to the Act, the circuit court dismissed the lawsuit, and the plaintiff appealed. The appellate court affirmed.

¶ 22 Initially, the appellate court noted that not every later-filed claim is retaliatory. "If it states a potentially valid cause of action and seeks damages within the ordinary range recoverable under the facts of the case, and there are no other facts suggesting an intent to chill the other party's right to seek redress, then the later claim has not been brought 'in response to' the other party's exercise of first amendment rights within the meaning of the Act. Thus, it would not be subject to a motion to dismiss under the Act." *Hytel Group, Inc.*, 405 Ill. App. 3d at 126.

¶ 23 The reviewing court examined the factors the circuit court had considered in determining whether the claim was filed in retaliation or was a valid claim which happened to be filed later. The circuit court considered whether the complaint stated a valid cause of action. Such an inquiry was appropriate because retaliatory intent may be inferred where a claim lacking in merit is filed shortly after the exercise of the protected rights. *Hytel Group, Inc.*, 405 Ill. App. 3d at 126. The court had also considered whether the extraordinarily high damages sought in the lawsuit were sufficiently supported by the facts in the record. Extremely high damages, unsupported by the facts, are intended to strike fear in the defendant rather than being a good-faith estimate of the injury sustained. *Hytel Group, Inc.*, 405 Ill. App. 3d at 126.

Finding that the plaintiff's lawsuit did not state a valid cause of action and that the large amount of damages sought by the plaintiff was not sufficiently supported by the facts, the circuit court determined that the lawsuit was a retaliatory claim which fell within the Act. Finding that the record supported the circuit court's determination, the reviewing court affirmed the dismissal of the lawsuit pursuant to the Act. *Hytel Group, Inc.*, 405 Ill. App. 3d at 126.

¶ 24        The reviewing court in *Hytel Group, Inc.* cautioned that application of the Act to possibly retaliatory claims must be done on a case-by-case basis and not applied in a "blanket fashion" to claims arising in other cases. *Hytel Group, Inc.*, 405 Ill. App. 3d at 126. This court reiterated that caution, noting that there were maybe other factors relevant to future cases. *Ryan*, 2012 IL App (1st) 120005, ¶ 23.

¶ 25        In *Ryan*, the defendants broadcast a four-part program detailing an investigation into the Cook County judiciary. The report resulted in an inquiry from the supreme court, and the named judges were subject to discipline. Between the broadcast of the third and fourth installments, the plaintiff filed a lawsuit against the defendants alleging defamation, invasion of privacy and intentional infliction of emotional distress. The circuit court denied the defendants' motion to dismiss based on the Act, and the defendants appealed.

¶ 26        In determining that the plaintiff's lawsuit was retaliatory, the factors this court considered were the timing of the filing of the lawsuit and the amount of damages requested. It could be inferred from the fact that the plaintiff's defamation suit was filed prior to the airing of the final segment of the program that the lawsuit was intended to deter the defendants from further publicizing their investigative findings. *Ryan*, 2012 IL App (1st) 120005, ¶ 23. The court found that the request for $28 million in damages was not justified by the nature of the plaintiff's alleged injuries. The court noted that demanding millions in damages for alleged defamation is a classic SLAPP scenario. *Ryan*, 2012 IL App (1st) 120005, ¶ 24; see *Hytel Group, Inc.*, 405 Ill. App. 3d at 126.

¶ 27        In the present case, the following factors from *Hytel Group, Inc.* are relevant to our determination as to whether Mr. Jursich's lawsuit was retaliatory: the potential validity of Mr. Jursich's cause of action; the timing of the filing of the defamation lawsuit; and the amount of damages requested.[1]

¶ 28        The circuit court found that Mr. Jursich's counterclaim stated a potentially viable cause of action. While the circuit court also found that the complained-of statements were not protected by absolute privilege, the defendants have not raised the argument that a cause of action is not viable because of the existence of an affirmative defense, such as absolute privilege. Moreover, in *Hammons*, this court rejected the argument that, for purposes of the Act, "meritless" lawsuits included those subject to dismissal for failure to state a cause of

---

[1] In *Ryan*, this court noted that the standard used in *Hytel Group, Inc.* in determining whether a claim was meritless was rejected in *Hammons*. This court did find *Hytel Group, Inc.* useful in determining whether a claim was retaliatory. *Ryan*, 2012 IL App (1st) 120005, ¶¶ 22-23.

action or barred by the statute of limitations. See *Hammons*, 2012 IL App (1st) 102644, ¶ 21; see also *Ryan*, 2012 IL App (1st) 120005, ¶ 28 n.4 (leaving unresolved the question as to whether an affirmative defense renders a cause of action "meritless" for purposes of the Act).

¶ 29    As to the timing factor, the statements by Messrs. McLaughlin and Carroll were made at the disciplinary hearing in October 2005; Mr. Jursich was not present at the meeting. In 2007, the CRCC filed suit to reduce to judgment the fines imposed on Mr. Jursich. It is undisputed that it was not until November 2008, during the course of that lawsuit, that Mr. Jursich became aware of the statements made at the October 2005 disciplinary hearing and filed his counterclaim for defamation. While the time between when Mr. Jursich learned of the alleged defamatory statements and the filing of the counterclaim appears to have been brief, it had been almost three years since the statements were made and over a year since the CRCC filed its suit to reduce the fines to judgment. Finally, rather than millions in damages, Mr. Jursich's third amended counterclaim sought an unspecified amount in compensatory damages and exemplary damages.

¶ 30    The defendants failed to present any affirmative evidence establishing that Mr. Jursich filed his counterclaim solely in response to the defendants' activities protected under the Act. The circuit court's finding that the counterclaim stated a potentially viable cause of action and the time and damages evidence in this case do not support the inference that Mr. Jursich's lawsuit was filed in order to deter the defendants from the exercise of their constitutional right to free speech or to proceed with the lawsuit in this case. Rather, the evidence strongly supports the inference that Mr. Jursich's counterclaim was filed as a result of his belief that he had been defamed by the statements made by Messrs. McLaughlin and Carroll and was intended to seek compensation for the damage to his reputation. Since the claim must be both retaliatory and meritless, we need not address whether Mr. Jursich's claim is also meritless. See *Ryan*, 2012 IL App (1st) 120005, ¶ 26 (although evidence of retaliatory intent was shown, the motion to dismiss the complaint under the Act was correctly denied because the defendants failed to show that the complaint was meritless).

¶ 31                                        CONCLUSION

¶ 32    The defendants failed to carry their burden to demonstrate affirmatively that Mr. Jursich's counterclaim for defamation was retaliatory and therefore a SLAPP lawsuit. We conclude that the circuit court did not err in denying the defendants' motion to dismiss the remaining counts of the third amended counterclaim.

¶ 33    The judgment of the circuit court is affirmed.

¶ 34    Affirmed.